# ADVERSARY PROCEEDING COVER SHEET

ADVERSARY PROCEEDING NUMBER

| PLAINTIFFS<br>David M. Nickless, Trustee | DEFENDANTS<br>William T. Brooks |
|---|---|
| ATTORNEY (Firm Name, Address, and Telephone No.)<br>David M. Nickless<br>Nickless and Phillips, P.C.<br>625 Main Street<br>Fitchburg, MA 01420<br>(978) 342-4590 | ATTORNEY (Firm Name, Address, and Telephone No.)<br>Vladimir von Timroth, Esq.<br>679 Pleasant Street<br>Paxton, MA 01612<br>(508) 753-2006 |
| **PARTY (Check One Box Only)**<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>**x Trustee** | **PARTY (Check One Box Only)**<br>**x Debtor**      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION:** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Denial of Discharge

## NATURE OF SUIT
(Number of up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11- Recovery of money/property - § 542 turnover of property
☐ 12- Recovery of money/property - § 547 preference
☐ 13- Recovery of money/property - § 548 fraudulent transfer
☐ 14- Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 – Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale Property**
☐ 31 – Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
**x 41 – Objection/ revocation of discharge § 727 (c),(d),(e)**

**FRBP 7001 (5) Revocation of Confirmation**
☐ 51 – Revocation of Confirmation

**RFBP 7001(6) – Dischargeability**
☐ 66 - Dischargeability - § 523(a)(1), (14), (14a) priority tax claims
☐ 62 – Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 – Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 – Dischargeability - § 523(a)(5), domestic support
☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63- Dischargeability - § 523(a)(8), student loan
☐ 64 - Dischargeability - § 523(a)(15), divorce of separation obligation (other than domestic support)
☐ 65 – Dischargeability - other

**FRBP 7001 (7) – Injunctive Relief**
☐ 71 – Injunctive relief – imposition of stay
☐ 72 – Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 – Subordination of claim or interest

**FRBP 7001 (9) Declaratory Judgment**
☐ 91 – Declaratory Judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01 – Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa *et. seq.*
☐ 02 – Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>William T. Brooks | BANKRUPTCY CASE NUMBER<br>07-41941-JBR | |
| DISTRICT IN WHICH CASE IS PENDING<br>Massachusetts | DIVISIONAL OFFICE<br>Worcester | NAME OF JUDGE<br>Joel B. Rosenthal |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ David M. Nickless | | |
| DATE:<br>July 18, 2008 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>David M. Nickless | |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re<br>William T. Brooks<br>      Debtor(s) | Chapter 7<br>No. 07-41941-JBR |
| David M. Nickless, Trustee<br>      Plaintiff<br><br>v.<br><br>William T. Brooks<br>      Defendant | Adv. Pro.<br>No. 08- |

COMPLAINT

This matter is a core proceeding and this Court has jurisdiction pursuant to 28 U.S.C. Sec. 1334.

Venue is proper in this Court pursuant to 28 U.S.C Sec. 1409(a).

1.  William T. Brooks (hereinafter the Debtor) filed a petition for relief under Chapter 13 of the
    Bankruptcy Code on May 22, 2007. The case was converted to one under Chapter 7 of the
    Bankruptcy Code on December 19, 2007.

2.  David M. Nickless is the duly appointed Chapter 7 Trustee of the Debtor (hereinafter the
    Trustee).

3.  On the date of filing of the bankruptcy petition the Debtor was the owner of property located at
    28 Union Street, Gardner, MA (hereinafter the Union Street Property) and 78 East Broadway
    Street, Gardner, MA (hereinafter the Broadway Street Property).

4.  The Debtor filed the petition and Schedules and Statement of Affairs with the Bankruptcy
    Court, asserting under the penalty of perjury that all of the statements in the bankruptcy petition

and the Schedules and Statement of Affairs were true and correct to the best of his knowledge information, and belief.

5.  Among the statements made under the penalty of perjury by the Debtor on his petition and in his Schedules and Statement of Affairs are the following:

  A.  The Debtor resided at the Broadway Street Property (page 1 of bankruptcy petition)

  B.  The Broadway Street Property is a single-family house (Schedules A & C)

  C.  He was and had for 9 years been employed by William T. Brooks & Sons Motors, Inc. (hereinafter the Corporation) (Schedule I)

  D.  He had made no transfers other than in the ordinary course of his personal and business affairs in the last two years (Question 10 of Statement of Affairs)

  E.  He had resided at 29 Prospect Street, Gardner until August 1, 2004 and otherwise had not moved in the three years preceding his bankruptcy petition. (Question 15 of Statement of Affairs.

6.  The Debtor had an opportunity to review each of the bankruptcy petition and the Schedules and Statement of Affairs prior to their filing.

7.  Each of the aforesaid statements was false at the time they were made. Despite knowing the statements were false the Debtor has made no attempt to file amended Schedules or Statement of Affairs nor has he corrected the misstatement on the first page of his bankruptcy petition.

8.  The Broadway Street Property is a single story cinderblock building located on 6,917 square feet in an area of Gardner zoned Commercial I (C1) and used for auto sales and service. A true copy of the tax card of the City of Gardner for the Broadway Street Property is attached hereto at A.

9. In December of 2006 a Notice of Activity and Use Limitation pursuant to MGL Chapter 21E, Section 6 and 310 CMR 40.0000 (hereinafter the 21E Notice), was filed with the Building Department of the City of Gardner. The 21E Notice was signed by the Debtor on December 20, 2006 and limits use of the Broadway Street Property to commercial/industrial purposes. The 21 Notice specifically states that "Use of the [Broadway Street] Property as a residence…and/or any other use at which a child's presence is likely" may "result in a significant risk of harm to the health, safety, public welfare or the environment or in a substantial hazard". A true copy of the 21E Notice is attached hereto at B.

10. On May 22, 2007, the very day he filed his bankruptcy petition, the Debtor caused the Corporation to transfer to himself the Broadway Street Property for the stated consideration of $100 (hereinafter the Broadway Street Transfer). A true copy of the Deed is attached hereto at C.

11. The Broadway Street Property constituted substantially all or all of the assets of the Corporation. Although the Debtor is the sole owner and director of the Corporation, he conducted none of the corporate formalities necessary to effectuate the Broadway Street Transfer.

12. Although the stated consideration for the Broadway Street Transfer was $100, the Debtor has now asserted under oath in a deposition that the transfer of the Broadway Street Property was in consideration of nearly $100,000 owed to him by the Corporation.

13. Also on May 22, 2007 the Debtor filed under oath a Declaration of Homestead covering the Broadway Street Property, declaring that he resided in the Broadway Street Property and that it was his home.

14. At the time he filed the Declaration of Homestead the Debtor resided at the Union Street Property and declared the Union Street Property as his residence for voting purposes. The statement in the Declaration in the Homestead that he resided in the Broadway Street Property was therefore false.

15. In May of 2008, after the Trustee filed an objection to the Debtor's homestead exemption in the Broadway Street Property and in an attempt to conceal from the Trustee the truth about his residence, the Debtor changed his address for voting purposes to the Broadway Street Property.

16. From prior to the filing of his bankruptcy petition to no earlier than March, 2008 the Debtor listed his address on his driver's license and his vehicle registrations as either 29 Prospect Street, Gardner or the Union Street Property. In March 2008, after the Trustee filed the objection to his homestead exemption the Broadway Street Property and in an attempt to conceal from the Trustee the truth about his residence, the Debtor changed his address with the Registry of Motor Vehicles to the Broadway Street Property and affixed stickers to both his driver's license and the registration for one vehicle. A true copy of the Debtor's driver's license and his vehicle registrations are attached hereto at D & E.

COUNT I
DENIAL OF DISCHARGE
11 U.S.C. SECTION 727 (a)(2)(A)

17. The Trustee repeats and alleges paragraphs 1–16 as though fully stated herein.

18. The debtor, with the intent to hinder, delay or defraud his creditors and the bankruptcy estate transferred the Broadway Street Property from the Corporation to himself within one year before the date of the filing of the petition.

19. The debtor, with the intent to hinder, delay or defraud his creditors and the bankruptcy estate transferred the obligations owed him by the Corporation to the Corporation within one year before the date of the filing of the petition.

WHEREFORE David M. Nickless, Trustee, prays that this court deny William T. Brooks a discharge pursuant to Section 727(a)(2)(A) of the Bankruptcy Code.

COUNT II
DENIAL OF DISCHARGE
11 U.S.C. SECTION 727 (a)(3)

20. The Trustee repeats and alleges paragraphs 1–19 as though fully stated herein.

21. The Debtor's actions subsequent to the filing of the bankruptcy petition, including specifically (a) changing his address for voting purposes to the Broadway Street Property in May of 2008 and (b) affixing stickers obtained from the Registry of Motor Vehicles to both his driver's license and the registration for a vehicle changing his address were concealment and or mutilation of recorded information from which the Debtor's financial condition or business transactions could be ascertained and were without justification under the circumstances of the case.

WHEREFORE David M. Nickless, Trustee, prays that this court deny William T. Brooks a discharge pursuant to Section 727(a)(3) of the Bankruptcy Code.

COUNT III
DENIAL OF DISCHARGE
11 U.S.C. SECTION 727 (a)(4)

22. The Trustee repeats and alleges paragraphs 1 – 21 as though fully stated herein.

23. The statements made by the Debtor on his bankruptcy petition that (a) he resided at the Broadway Street Property, (b) the Broadway Street Property is a single-family house, (c) he had for 9 years been employed by William T. Brooks & Sons Motors, Inc. (d) he had made no

transfers other than in the ordinary course of his personal and business affairs in the last two years, and (e) he had resided at 29 Prospect Street, Gardner until August 1, 2004 and otherwise had not moved in the three years preceding his bankruptcy petition were all knowingly and fraudulently made in the case.

24. His statement under oath in his Declaration of Homestead that he resided at the Broadway Street Property was knowingly and fraudulently made in connection with the case.

WHEREFORE David M. Nickless, Trustee, prays that this court deny William T. Brooks a discharge pursuant to Section 727(a)(4) of the Bankruptcy Code.

/s/ David M. Nickless
David M. Nickless, Trustee
Nickless and Phillips, PC
625 Main Street
Fitchburg, MA 01420
(978) 342-4590
BBO No. 371920
dnickless.nandp@verizon.net

# EXHIBIT

# A

**Vision ID: 4815**   Account #   Bldg #: 1 of 1   Sec #: 1 of 1   Card 1 of 1   Print Date: 07/15/2008 09:13

## VISION

**316**
**GARDNER, MA**

### CURRENT OWNER
BROOKS WILLIAM T
78 E BROADWAY

GARDNER, MA 01440
Additional Owners:

| | TOPO. | UTILITIES | STRT./ROAD | LOCATION |
|---|---|---|---|---|
| | 1 Level | 1 All Public | 1 Paved | |
| | | | 2 Suburban | |
| | | | 4 Bus. District | |

Other ID:
Sub-Div
Photo
Ward
Prec.

GIS ID:   0S-14 00009A 0232A

#### CURRENT ASSESSMENT
| Description | Code | Appraised Value | Assessed Value |
|---|---|---|---|
| COMMERC. | 3310 | 19,100 | 19,100 |
| COM LAND | 3310 | 50,800 | 50,800 |
| COMMERC. | 3310 | 1,800 | 1,800 |

Total:   71,700

### RECORD OF OWNERSHIP
| | BK-VOL/PAGE | SALE DATE | q/u | v/i | SALE PRICE | V.C. |
|---|---|---|---|---|---|---|
| CROOKS WILLIAM T | 41187/120 | 05/22/2007 | Q | I | 1 | 1B |
| MASON MOTORS INC | 09394/0043 | 05/01/1986 | U | I | 1 | 1B |
| MASON PHILIP | 09377/0347 | 04/25/1986 | Q | I | 15,000 | 00 |

#### PREVIOUS ASSESSMENTS (HISTORY)
| Yr. | Code | Assessed Value | Yr. | Code | Assessed Value | Yr. | Code | Assessed Value |
|---|---|---|---|---|---|---|---|---|
| 2008 | 3310 | 19,100 | 2007 | 3300 | 15,400 | 2007 | 3300 | 15,400 |
| 2008 | 3310 | 50,800 | 2007 | 3300 | 43,800 | 2007 | 3300 | 43,800 |
| 2008 | 3310 | 1,800 | 2007 | 3300 | 1,800 | 2007 | 3300 | 1,800 |

Total: 71,700   Total: 61,000   Total: 61,000

### EXEMPTIONS
| Year | Type | Description | Amount |
|---|---|---|---|

Total:

### ASSESSING NEIGHBORHOOD
| | Code | Description |
|---|---|---|
| NBHD/SUB 0001/A | | |
| NBHD NAME | | |
| STREET INDEX NAME | TRACING |

*This signature acknowledges a visit by a Data Collector or Assessor*

#### APPRAISED VALUE SUMMARY
| | |
|---|---|
| Appraised Bldg. Value (Card) | 19,100 |
| Appraised XF (B) Value (Bldg) | 0 |
| Appraised OB (L) Value (Bldg) | 1,800 |
| Appraised Land Value (Bldg) | 50,800 |
| Special Land Value | 0 |
| Total Appraised Parcel Value | 71,700 |
| Valuation Method: | C |
| Exemptions: | 0 |
| Adjustment: | 0 |
| Net Total Appraised Parcel Value | 71,700 |

### SUPPLEMENTAL DATA
ASSOC PID#

### OTHER ASSESSMENTS
| Description | Number | Amount | Comm. Int. |
|---|---|---|---|

Total:

### NOTES
BATCH

#### VISIT/CHANGE HISTORY
| Date | Type | IS | ID | Cd. | Purpose/Result |
|---|---|---|---|---|---|
| 3/13/1998 | | | RM | 02 | Measur+2Visit - Info Car |
| 6/12/1986 | | | DC | | |

### PERMIT RECORD
| Permit ID | Issue Date | Type | Description | Amount | Insp. Date | % Comp. | Date Comp. | Comments |
|---|---|---|---|---|---|---|---|---|

### LAND LINE VALUATION SECTION
| B # | Use Code | Use Description | Zone | D | Frontage | Depth | Units | Unit Price | I. Factor | S.A. | Disc | Acre C. Factor | ST. Idx. Adj. | C# | Notes-Adj | Special Pricing | Adj. Unit Price | Land Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 331C | Auto S & S | C1 | | | | 6,917 SF | 7.35 | 1.00 | A | 1.0000 | 1.00 | 1.00 | | | | 7.35 | 50,800 |

Total Card Land Units:   0.16 AC   Parcel Total Land Area: 0.16 AC   Total Land Value:   50,800

### BROOKS WILLIAM T / MASON MOTORS INC / MASON PHILIP
WHITE
BROOKS + SON MOTORS
TENANT (3/07)
LEASE 697-1050

**Property Location: 78 E BROADWAY**
**Vision ID: 4815**  Account #  MAP ID: S-14/9/A 41//  Bldg #: 1 of 1  Bldg Name:  Sec #: 1 of 1  Card 1 of 1  State Use: 331C  Print Date: 07/15/2008 09:13

## CONSTRUCTION DETAIL

| Element | Cd. | Ch. | Description |
|---|---|---|---|
| Style | 27 | | Auto Sales Rpr |
| Model | 96 | | Industrial |
| Grade | 02 | | Below Average |
| Stories | 1 | | |
| Occupancy | 1 | | |
| Exterior Wall 1 | 15 | | Concr/Cinder |
| Exterior Wall 2 | | | |
| Roof Structure | 02 | | Shed |
| Roof Cover | 02 | | Rolled Compos |
| Interior Wall 1 | 01 | | Minim/Masonry |
| Interior Wall 2 | | | |
| Interior Floor 1 | 03 | | Concr-Finished |
| Interior Floor 2 | | | |
| Heating Fuel | 02 | | Oil |
| Heating Type | 04 | | Forced Air-Duc |
| AC Type | 01 | | None |
| Bldg Use | 331C | | Auto S & S |
| Total Rooms | | | |
| Total Bedrms | | | |
| Total Bths | 2 | | |
| Bth AC | | | |
| Heat/AC | 00 | | NONE |
| Fnd Type | 03 | | MASONRY |
| Frm/Plumbing | 02 | | AVERAGE |
| Int Wall | 02 | | CEILING ONLY |
| Kitch Pins | 02 | | AVERAGE |
| Cndo Pins | 02 | | AVERAGE |
| Wall Height | 12 | | |
| % Comm Wall | 0 | | |
| % Comn Wall | 0 | | |

## CONSTRUCTION DETAIL (CONTINUED)

| Element | Cd. | Ch. | Description |
|---|---|---|---|
| | | | |

### MIXED USE

| Code | Description | Percentage |
|---|---|---|
| 331C | Auto S & S | 100 |

## COST/MARKET VALUATION

| | |
|---|---|
| Adj. Base Rate: | 52.39 |
| Section, RCN: | 38,192 |
| Net Other Adj: | 0.00 |
| Replace Cost | 38,192 |
| AYB | 1930 |
| EYB | 1981 |
| Dep Code | A |
| Remodel Rating | |
| Year Remodeled | |
| Dep % | 50 |
| Functional Obslnc | 0 |
| External Obslnc | |
| Cost Trend Factor | 1 |
| Condition | |
| % Complete | |
| Overall % Cond | 50 |
| Apprais Val | 19,100 |
| Dep % Ovr | 0 |
| Dep Ovr Comment | |
| Misc Imp Ovr | 0 |
| Misc Imp Ovr Comment | |
| Cost to Cure Ovr | 0 |
| Cost to Cure Ovr Comment | |

BAS

27

27

**No Photo On Record**

## OB-OUTBUILDING & YARD ITEMS(L) / XF-BUILDING EXTRA FEATURES(B)

| Code | Description | Sub | Sub Descript | L/B | Units | Unit Price | Yr | Gde | Dp Rt | Cnd | %Cnd | Apr Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PAV1 | Paving Asphalt | | | L | 2,000 | 1.80 | 2002 | | 0 | | 50 | 1,800 |

## BUILDING SUB-AREA SUMMARY SECTION

| Code | Description | Living Area | Gross Area | Eff. Area | Unit Cost | Undeprec. Value |
|---|---|---|---|---|---|---|
| BAS | First Floor | 729 | 729 | 729 | 52.39 | 38,192 |

# EXHIBIT

# B

**Form 1075**
## NOTICE OF ACTIVITY AND USE LIMITATION
### M.G.L. c. 21E, § 6 and 310 CMR 40.0000

Disposal Site Name: W.T. Brooks and Son Motors, Inc. 78 East Broadway, Gardner, MA
DEP Release Tracking No.(s): 2-15859

       This Notice of Activity and Use Limitation ("Notice") is made as of this ___ day of December, 2006, by W.T. Brooks and Son Motors, Inc., 78 East Broadway, Gardner, MA 01440, together with its successors and assigns (collectively "Owner").

### W I T N E S S E T H:

       WHEREAS, W.T. Brooks and Son Motors, Inc., is the owner in fee simple of that certain parcel of land located in Gardner, Worcester County, Massachusetts with the improvements thereon, pursuant to a deed recorded with the Worcester County Registry of Deeds in Book 9394, Page 43;

       WHEREAS, said parcel of land, which is more particularly bounded and described in Exhibit A, attached hereto and made a part hereof ("Property") is subject to this Notice of Activity and Use Limitation. The Property is shown on a plan entitled "Plan of Land, 78 East Broadway in Gardner, MA" dated August 23, 2006 by Szoc Surveyors to be recorded herewith;

       WHEREAS, the Property ("Property") is subject to this Notice of Activity and Use Limitation. The Property is shown on said plan to be recorded herewith;

       WHEREAS, the Property comprises the disposal site as the result of a release of oil and/or hazardous material. Exhibit B shows the Property subject to this Notice of Activity and Use Limitation to the boundaries of said disposal site existing within the limits of the Property and to the extent such boundaries have been established. Exhibit B is attached hereto and made a part hereof; and

       WHEREAS, one or more response actions have been selected for the Disposal Site in accordance with M.G.L. c. 21E ("Chapter 21E") and the Massachusetts Contingency Plan, 310 CMR 40.0000 ("MCP"). Said response actions are based upon (a) the restriction of human access to and contact with oil and/or hazardous material in soil and/or (b) the restriction of certain activities occurring in, on, through, over or under the Property. The basis for such restrictions is set forth in an Activity and Use Limitation Opinion ("AUL Opinion") dated November 28, 2006, (which is attached hereto as Exhibit C and made a part hereof);

       NOW, THEREFORE, notice is hereby given that the Activity and Use Limitations set forth in said AUL Opinion are as follows:

1. <u>Activities and Uses Consistent with the AUL Opinion</u>. The AUL Opinion
provides that a condition of No Significant Risk to health, safety, public welfare
or the environment exists for any foreseeable period of time (pursuant to 310
CMR 40.0000) so long as any of the following activities and uses occur on the
Property:

(i) The Property may continue to be used for commercial/ industrial
purposes. Maintenance of the existing building, paving, and vegetation
(when necessary) will be allowed, provided this does not result in the
disturbance of PAH and petroleum-impacted soil located at zero to fifteen
feet below grade;

(ii) Short-term (three months or less) underground utility and/or
construction activities including, but not limited to excavation (including
emergency repair of underground utility lines), which are likely to disturb
impacted soil at zero to fifteen feet below grade (or groundwater table),
provided that such activities are conducted in accordance with Obligations
and Conditions Numbers 1 and 2 of this AUL Opinion ("Opinion"), the soil
management procedures of the MCP cited at 310 CMR 40.0030, and all
applicable health and safety practices pursuant to 310 CMR 40.0018;

(iii) Such other activities or uses which, in the Opinion of an LSP, shall
present no greater risk of harm to health, safety, public welfare or the
environment than the activities and uses set forth in this Paragraph; and

(iv) Such other activities and uses not identified in Paragraph 2 as being
Activities and Uses Inconsistent with the AUL.

2. <u>Activities and Uses Inconsistent with the AUL Opinion</u>. Activities and uses
which are inconsistent with the objectives of this Notice of Activity and Use
Limitation, and which, if implemented at the Property, may result in a
significant risk of harm to health, safety, public welfare or the environment or
in a substantial hazard, are as follows:

(i) Use of the Property as a residence, school (with the exception of adult
education), daycare, nursery, recreational area (such as a park or athletic
field), and/or any other use at which a child's presence is likely;

(ii) Any activity including, but not limited to removal of the existing
building, and/or paving, which is likely to disturb impacted soils located at
zero to fifteen feet below grade associated with underground utility and/or
construction work, without prior development and implementation of a Soil

Management Plan and Health and Safety Plan in accordance with Obligations and Conditions (i) and (ii) of Section 3 below;

(iii) Any activity which is likely to disturb the impacted soil located at zero to fifteen feet below grade for a period of time greater than three months, unless such activity is first evaluated by an LSP who renders an Opinion stating that such activity is consistent with maintaining a condition of No Significant Risk and that such activity is conducted in accordance with Obligations and Conditions (i) and (ii) of Section 3 below, and;

(iv) Relocation of the impacted soil located at zero to fifteen feet below grade unless such relocation is first evaluated by an LSP who renders an Opinion stating that such relocation is consistent with maintaining a condition of No Significant Risk.

3.   <u>Obligations and Conditions Set Forth in the AUL Opinion</u>.   If applicable, obligations and/or conditions to be undertaken and/or maintained at the Property to maintain a condition of No Significant Risk as set forth in the AUL Opinion shall include the following:

(i) A Soil Management Plan must be prepared by a Licensed Site Professional (LSP) prior to the commencement of any activity that is likely to disturb impacted soil located at zero to fifteen feet below grade. The Soil Management Plan should describe appropriate soil management, characterization, storage, transport, and disposal procedures in accordance with the MCP cited at 310 CMR 40.0030 et seq. Workers who may come in contact with the impacted soil should be appropriately trained on the requirements of the Plan, and a Plan must remain available on-site throughout the course of the project;

(ii) A Health and Safety Plan must be prepared and implemented prior to the commencement of any activity that may result in the disturbance of PAH and petroleum-impacted soil located at zero to fifteen feet below grade. The Health and Safety Plan should be prepared by a qualified individual appropriately trained in worker health and safety procedures and requirements. The Plan should specify the type of personal protection, engineering controls, and environmental monitoring necessary to prevent worker and other potential sensitive receptor exposures to the impacted soil through ingestion, dermal contact and inhalation. Workers who may come in contact with the impacted soil should be appropriately trained on the requirements of the Plan, and the Plan must remain available on-site throughout the course of the project;

(iii) The impacted soil located at zero to fifteen feet below grade must remain at depth and must not be relocated, unless such activity is first evaluated by an LSP who renders an Opinion which states that such activity poses no greater risk of harm to health, public welfare, or the environment and ensures that a condition of No Significant Risk is maintained, and:

(iv) The maintenance of the integrity bituminous pavement is required.

4. <u>Proposed Changes in Activities and Uses</u>.   Any proposed changes in activities and uses at the Property which may result in higher levels of exposure to oil and/or hazardous material than currently exist shall be evaluated by an LSP who shall render an Opinion, in accordance with 310 CMR 40.1080 *et seq.*, as to whether the proposed changes will present a significant risk of harm to health, safety, public welfare or the environment. Any and all requirements set forth in the Opinion to meet the objective of this Notice shall be satisfied before any such activity or use is commenced.

5. <u>Violation of a Response Action Outcome</u>.   The activities, uses and/or exposures upon which this Notice is based shall not change at any time to cause a significant risk of harm to health, safety, public welfare, or the environment or to create substantial hazards due to exposure to oil and/or hazardous material without the prior evaluation by an LSP in accordance with 310 CMR 40.1080 *et seq.*, and without additional response actions, if necessary, to achieve or maintain a condition of No Significant Risk or to eliminate substantial hazards.

If the activities, uses, and/or exposures upon which this Notice is based change without the prior evaluation and additional response actions determined to be necessary by an LSP in accordance with 310 CMR 40.1080 *et seq.*, the owner or operator of the Property subject to this Notice at the time that the activities, uses and/or exposures change, shall comply with the requirements set forth in 310 CMR 40.0020.

6. <u>Incorporation Into Deeds, Mortgages, Leases, and Instruments of Transfer.</u> This Notice shall be incorporated either in full or by reference into all future deeds, easements, mortgages, leases, licenses, occupancy agreements or any other instrument of transfer, whereby an interest in and/or a right to use the Property or a portion thereof is conveyed.

Owner hereby authorizes and consents to the filing and recordation and/or registration of this Notice, said Notice to become effective when executed under seal by the undersigned LSP, and recorded and/or registered with the appropriate Registry(ies) of Deeds and/or Land Registration Office(s).

WITNESS the execution hereof under seal this 20ᵗʰ day of December, 2006.

W.T. Brooks and Son Motors, Inc.

By: _____

William T. Brooks, President
W.T. Brooks and Son Motors, Inc.

## COMMONWEALTH OF MASSACHUSETTS

Worcester, ss    Dec 20ᵗʰ, 2006

On this 20ᵗʰ day of December, 2006, before me, the undersigned notary public, personally appeared William T. Brooks, as President for W.T. Brooks & Son Motors, Inc., a corporation, proved to me through satisfactory evidence of identification, which were a valid driver's license and a Certificate of Incumbency for the corporation or Certificate of Organization, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Notary Public:
My Commission Expires:



MARY A. DELANEY
Notary Public
Commonwealth of Massachusetts
My Commission Expires Jan 11, 2013

The undersigned LSP hereby certifies that he executed the aforesaid Activity and Use Limitation Opinion attached hereto as Exhibit C and made a part hereof and that in his Opinion this Notice of Activity and Use Limitation is consistent with the terms set forth in said Activity and Use Limitation Opinion.

Date: _12/21/06_

James A. Luker, Jr.
(LSP SEAL)

COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss        DECEMBER 21, 2006

Then personally appeared the above named James A. Luker, Jr. and acknowledged the foregoing instrument to be his free act and deed before me,

Notary Public: _Bruce P. White_
My Commission Expires: 8/7/09

Upon recording, return to:
Gale Associates, Inc.
163 Libbey Parkway
Weymouth, MA  02189

## EXHIBIT A

### Legal Description of the Property

A certain parcel of land, with the buildings and other improvements thereon, situated on the northerly side of East Broadway, Route 2A in the Village of South Gardner, Gardner, Worcester County, Massachusetts, being shown on a plan entitled "Plan of Land in Gardner, MA, dated August 23, 2006, by Szoc Surveyors to be recorded herewith, more particularly bounded and described as follows:

Beginning at the most westerly corner thereof, at a bolt in the northeasterly line of East Broadway, Route 2A, at a corner of land now or formerly of Joseph G. Daigle; thence

SOUTHWESTERLY at an included angle of 92 54' 37" by said Gates land, 77.82 feet to a point in the northeasterly line of East Broadway, Route 2A; thence

SOUTHEASTERLY at an included angle of 89 41' 23"  by said Modern Contract Furniture, Inc. land and lot "2", 87.27 feet to an iron pin in line now or formerly of Erwin E. and Norman Gates; thence

NORTHEASTERLY at an included angle of 90 21' 00" with the last course to be herein described, by said Daigle land, 77.66 feet to an iron pin at a corner of other land of Modern Contract Furniture, Inc. and being shown as Lot "2" on a plan hereinafter referred to; thence

NORTHWESTERLY at an included angle of 87 03' 00" by the northeasterly line of East Broadway, 90.80 feet to a bolt at a corner of the aforementioned Daigle land and the point of beginning. Containing 6,917 square feet.

The above described premises are shown as lot 1 on a plan entitled, "Plan of 78 East Broadway, Gardner, Massachusetts, Scale 1 inch = 20 feet, August 2006. Brian M. Szoc, P.L. Surveyor, 32 Pleasant Street, Gardner, Mass 01440," recorded with Worcester District Registry of Deeds in Plan Book _____, Plan ___.

For title, see deed recorded with Worcester Registry of Deeds in Book 9394, Page 43.

## **EXHIBIT B**

### **See Attached Plan**



PLAN OF LAND
SHOWING
ACTIVITY & USE LIMITATION
ON LAND OF
WILLIAM T. BROOKS
& SON MOTORS, INC.
(OWNERS)
GARDNER, MA
AUGUST 23, 2006  S2OC SURVEYORS
32 PLEASANT ST., GARDNER, MA
TEL: 978-632-0233  FAX: 978-630-1548

LOCUS MAP 1"=2000'

FOR REGISTRY USE ONLY

LEGEND:
●  IRON PIPE
+  ANGLE POINT
⊗  WATER VALVE
⊘  UTILITY POLE
——  EDGE OF PAVEMENT
F./S.  FOUND OR SET

CHAPTER 380 ACTS OF 1966
(81-X CERTIFICATION)
"I HEREBY CERTIFY THAT THE PROPERTY LINES
SHOWN ON THIS PLAN ARE THE LINES DIVIDING
EXISTING OWNERSHIPS, AND THE LINES OF PUBLIC OR
PRIVATE STREETS AND WAYS SHOWN ARE THOSE OF PUBLIC OR
PRIVATE STREETS OR WAYS ALREADY ESTABLISHED
AND THAT NO NEW LINES FOR DIVISION OF
EXISTING OWNERSHIP OR FOR NEW WAYS ARE SHOWN"
(SIGNED) _____ G. _____ VL. S. □
REGISTERED LAND SURVEYOR
DATE:  AUGUST 23, 2006

I CERTIFY THAT THIS PLAN
CONFORMS TO THE RULES AND
REGULATIONS OF THE REGISTERS
OF DEEDS OF THE COMMONWEALTH
OF MASSACHUSETTS.  B. M. Szc

8/14/06

WENDY L. MCCULLOUGH
(BOOK 25484, PAGE 34)

R.R. SPK.
S.

S 03°-54'-01" W  77.82'

141.78'

MTDA REALTY TRUST
LOT "2" ON PLAN BOOK 552, PLAN 77
(BOOK 3037, PAGE 279)

S 83°-11'-23" E  87.27'

NEW    PAVED    PARKING

PAVED    PARKING

GARAGE #78

LOT "1"
6,917 S.F.
(SEE PLAN BOOK 552, PLAN 77)
*ENTIRE LOT IS ACTIVITY &
USE LIMITATION AREA ("AUL")*

N 83°-08'-59" W  90.80'

BROADWAY
(ROUTE # 2A)

EAST

PAVED    PARKING

126.05'

N 06°-30'-01" E  77.66'

MAGNETIC 2006

JOSEPH G. DAIGLE
(BOOK 4313, PAGE 374)

## EXHIBIT C

## ACTIVITY AND USE LIMITATION OPINION

In accordance with the requirements of 310 CMR 40.1074, this Activity and Use Limitation Opinion has been prepared for a parcel of land located at 78 East Broadway in Gardner, Massachusetts.

### Site History

The Site consists of a 6,917 square foot parcel of land improved with a 729 square foot slab-on-grade building and a paved parking area. The area surrounding the building is paved and used for parking and vehicle storage. An approximately 10 foot wide strip on the eastern property boundary and 20 feet on the western property boundary is vegetated. The site is currently operated by Brooks and Sons Motors, Inc., a used car dealership. Historically, the site was used as a gasoline service station dating back to the 1930s.

### Reason for Activity and Use Limitation

The previous investigations have documented that there is PAH and petroleum-impacted soil from 0-6 feet below grade.

A Method 3 Risk Characterization was performed to evaluate the risk posed by contamination remaining in the soil at the site.

The Method 3 Risk Characterization relies upon detailed information about the site, the oil and/or hazardous materials, the potential exposures to human and environmental receptors under all current and reasonably foreseeable site activities and uses to characterize the risk of harm. The scope and level of effort of the Method 3 Risk Characterization reflects the site-specific nature of this method and the information used to characterize the risk is documented within the Method 3 Risk Characterization.

The Method 3 Risk Assessment takes the information gathered about the site and evaluates whether the site could pose a significant risk of harm to health, safety, public welfare, and the environment if the site were not remediated. This evaluation is based on human and environmental exposures that may result from the site's current use and condition, as well as any foreseeable use of the site.

The Method 3 generally considers the public health risk posed by the site through multi-media exposures and provides estimates of cancer and non-cancer risks. The human health risk assessment at this site focuses on exposure to subsurface soil. The cumulative cancer risks are compared to Cumulative Cancer Risk limit specified in the MCP, which is an excess lifetime cancer risk equal to one-in-one hundred thousand. Cumulative Non-Cancer Risks are compared to a Cumulative Non-Cancer Risk Limit, which is a hazard index equal to one. Exposure Point Concentrations are also compared to any applicable or suitably analogous standards identified for this site. The Method 3 assumes that the site is covered

with asphalt and/or a building and there is no direct contact with the impacted soil.  The Activity and Use Limitation is required to prevent exposure to the impacted soil and groundwater and to limit current and future excavation, residential and child related activities.

**Permitted Activities and Uses**

(i) The Property may continue to be used for commercial purposes.   Maintenance of the existing building, paving, and vegetation (when necessary) will be allowed provided this does not result in the disturbance of metal and petroleum-impacted soil located at zero to fifteen feet below grade;

(ii) Short-term (three months or less) underground utility and/or construction activities including, but not limited to excavation (including emergency repair of underground utility lines), which are likely to disturb metals and petroleum-impacted soil at zero to fifteen feet below grade, provided that such activities are conducted in accordance with Obligations and Conditions numbers 1 and 2 of this AUL Opinion ("Opinion"), the soil management procedures of the MCP cited at 310 CMR 40.0030, and all applicable health and safety practices pursuant to 310 CMR 40.0018;

(iii) Such other activities or uses which, in the Opinion of an LSP, shall present no greater risk of harm to health, safety, public welfare or the environment than the activities and uses set forth in this Paragraph; and

(iv) Such other activities and uses not identified in Paragraph 2 as being Activities and Uses Inconsistent with the AUL.

**Activities and Uses Inconsistent with AUL Opinion**

(i) Use of the Property as a residence, school (with the exception of adult education), daycare, nursery, recreational area (such as a park or athletic field), and/or any other use at which a child's presence is likely;

(ii) Any activity including, but not limited to, removal of the existing building, paving, or excavation, which is likely to disturb metals and petroleum-impacted soils located at zero to fifteen feet below grade associated with underground utility and/or construction work, without prior development and implementation of a Soil Management Plan and Health and Safety Plan in accordance with Obligations and Conditions (i) and (ii) of this AUL Opinion;

(iii) Any activity which is likely to disturb placement of building foundation or metals and petroleum-impacted soil located at zero to fifteen feet below grade, unless such activity is first evaluated by an LSP who renders an Opinion stating that such activity is consistent with maintaining a condition of No Significant Risk and that such activity is conducted in accordance with Obligations and Conditions (i) and (ii) of this AUL, and;

(iv) Relocation of the metals and petroleum-impacted soil located at zero to fifteen feet below grade, unless such relocation is first evaluated by an LSP who renders an Opinion stating that such relocation is consistent with maintaining a condition of No Significant Risk.

## Obligations and Conditions

(i) A Soil Management Plan must be prepared by a Licensed Site Professional (LSP) prior to the commencement of any activity that is likely to disturb metals and petroleum-impacted soil located at zero to fifteen feet below grade. The Soil Management Plan should describe appropriate soil management, characterization, storage, transport, and disposal procedures in accordance with the MCP cited at 310 CMR 40.0030 et seq. Workers who may come in contact with metals and petroleum-impacted soil should be appropriately trained on the requirements of the Plan, and a Plan must remain available on-site throughout the course of the project;

(ii) A Health and Safety Plan must be prepared and implemented prior to the commencement of any activity that may result in the disturbance of metals and petroleum-impacted soil located at zero to fifteen feet below grade. The Health and Safety Plan should be prepared by a qualified individual appropriately trained in worker health and safety procedures and requirements. The Plan should specify the type of personal protection, engineering controls, and environmental monitoring necessary to prevent worker and other potential sensitive receptor exposures to metals and petroleum-impacted soil through ingestion, dermal contact and inhalation. Workers who may come in contact with metals and petroleum-impacted soil should be appropriately trained on the requirements of the Plan, and the Plan must remain available on-site through out the course of the project, and;

(iii) The PAH and petroleum-impacted soil located at zero to fifteen feet below grade must remain at depth and must not be relocated, unless such activity is first evaluated by an LSP who renders an Opinion which states that such activity poses no greater risk of harm to health, public welfare, or the environment and ensures that a condition of No Significant Risk is maintained.

James A. Luker, Jr., C.P.G., L.S.P.,

Gale Associates, Inc.
163 Libbey Parkway
Weymouth, MA 02189

Date:  December 13, 2006

G:756330\AULForm1075.doc



**Massachusetts Department of Environmental Protection**
*Bureau of Waste Site Cleanup*

**BWSC113A**

**ACTIVITY & USE LIMITATION (AUL) OPINION FORM**
Pursuant to 310 CMR 40.1056 & 40.1070 - 40.1084 (Subpart J)

Release Tracking Number

2 - 15859

---

**A. DISPOSAL SITE LOCATION:**

1. Disposal Site Name:  **W.T. Brooks and Son**

2. Street Address:  **78 East Broadway**

3. City/Town:  **Gardner**    4. ZIP Code:  **01440-0000**

---

**B. THIS FORM IS BEING USED TO:**    (check one)

☑ 1. Provide the LSP Opinion for a Notice of Activity and Use Limitation, pursuant to 310 CMR 40.1074.

☐ 2. Provide the LSP Opinion for an Evaluation of Changes in Land Uses/Activities and/or Site Conditions after a Response Action Outcome Statement, pursuant to 310 CMR 40.1080. Include BWSC113A as an attachment to BWSC113. Section A and C do not need to be completed.

☐ 3. Provide the LSP Opinion for an Amended Notice of Activity and Use Limitation, pursuant to 310 CMR 40.1081(4).

☐ 4. Provide the LSP Opinion for a Partial Termination of a Notice of Activity and Use Limitation, pursuant to 310 CMR 40.1083(3) .

☐ 5. Provide the LSP Opinion for a Termination of a Notice of Activity and Use Limitation, pursuant to 310 CMR 40.1083(1)(d).

☐ 6. Provide the LSP Opinion for a Grant of Environmental Restriction, pursuant to 310 CMR 40.1071.

☐ 7. Provide the LSP Opinion for an Amendment of a Grant of Environmental Restriction, pursuant to 310 CMR 40.1081(3).

☐ 8. Provide the LSP Opinion for a Partial Release of a Grant of Environmental Restriction, pursuant to 310 CMR 40.1083(2).

☐ 9. Provide the LSP Opinion for a Release of a Grant of Environmental Restriction, pursuant to 310 CMR 40.1083(1)(c).

☐ 10. Provide the LSP Opinion for a Confirmatory Activity and Use Limitation, pursuant to 310 CMR 40.1085(4).

**(Unless otherwise noted above, all sections of this form (BWSC113A) must be completely filled out, printed, stamped, signed with black ink and attached as an exhibit to the AUL Document to be recorded and/or registered with the Registry of Deeds and/or Land Registration Office.)**

---

**C. AUL INFORMATION:**

1. Is the address of the property subject to AUL different from the disposal site address listed above?

☑ a. No   ☐ b. Yes    If yes, then fill out address section below.

2. Street Address:

3. City/Town:    4. ZIP Code:

---



# Massachusetts Department of Environmental Protection
*Bureau of Waste Site Cleanup*

**BWSC113A**

## ACTIVITY & USE LIMITATION (AUL) OPINION FORM
Pursuant to 310 CMR 40.1056 & 40.1070 - 40.1084 (Subpart J)

Release Tracking Number

| 2 | - | 15859 |

---

**D. LSP SIGNATURE AND STAMP:**

I attest under the pains and penalties of perjury that I have personally examined and am familiar with this transmittal form, including any and all documents accompanying this submittal. In my professional opinion and judgment based upon application of (i) the standard of care in 309 CMR 4.02(1), (ii) the applicable provisions of 309 CMR 4.02(2) and (3), and 309 CMR4.03(2), and (iii) the provisions of 309 CMR 4.03(3), to the best of my knowledge, information and belief,

> *if Section B indicates that a Notice of Activity and Use Limitation is being registered and/or recorded*, the Activity and Use Limitation that is the subject of this submittal (i) is being provided in accordance with the applicable provisions of M.G.L. c. 21E and 310 CMR 40.0000 and (ii) complies with 310 CMR 40.1074;

> *if Section B indicates that an Evaluation of Changes in Land Uses/Activities and/or Site Conditions after a Response Action Outcome Statement is being submitted*, this evaluation was developed in accordance with the applicable provisions of M.G.L. c. 21E and 310 CMR 40.0000 and (ii) complies with 310 CMR 40.1080;

> *if Section B indicates that an Amended Notice of Activity and Use Limitation or Amendment to a Grant of Environmental Restriction is being registered and/or recorded*, the Activity and Use Limitation that is the subject of this submittal (i) is being provided in accordance with the applicable provisions of M.G.L. c. 21E and 310 CMR 40.0000 and (ii) complies with 40.1081;

> *if Section B indicates that a Termination or a Partial Termination of a Notice of Activity and Use Limitation, or a Release or Partial Release of a Grant of Environmental Restriction is being registered and/or recorded*, the Activity and Use Limitation that is the subject of this submittal (i) is being provided in accordance with the applicable provisions of M.G.L. c. 21E and 310 CMR 40.0000 and (ii) complies with 310 CMR 40.1083;

> *if Section B indicates that a Grant of Environmental Restriction is being registered and/or recorded*, the Activity and Use Limitation that is the subject of this submittal (i) is being provided in accordance with the applicable provisions of M.G.L. c. 21E and 310 CMR 40.0000 and (ii) complies with 310 CMR 40.1071;

> *if Section B indicates that a Confirmatory Activity and Use Limitation is being registered and/or recorded*, the Activity and Use Limitation that is the subject of this submittal (i) is being provided in accordance with the applicable provisions of M.G.L. c. 21E and 310 CMR 40.0000 and (ii) complies with 310 CMR 40.1085(4);

I am aware that significant penalties may result, including, but not limited to, possible fines and imprisonment, if I submit information which I know to be false, inaccurate or materially incomplete.

1. LSP #: 6522

2. First Name: James          3. Last Name: Luker

4. Telephone: (781) 335-6465      5. Ext:          6. FAX:

7. Signature: *James G. Luker*          8. Date: 12/21/06
                                                     mm/dd/yyyy

9. LSP Stamp:

---

Revised: 06/27/2003

# EXHIBIT

# C

Return to:
William T. Brooks
78 E. Broadway St.
Gardner, MA 01440



Bk: 41187 Pg: 210   Doc: DEED
Page: 1 of 2   05/22/2007 12:02 PM

# Quitclaim Deed

**NASON MOTORS, INC. N/K/A W.T. BROOKS & SON MOTORS, INC.**, a Massachusetts Corporation having its usual place of business at 78 East Broadway St., Gardner, Worcester County, Massachusetts,

in consideration of **ONE DOLLAR AND 00/100 ($1.00 Dollar)**, paid, grants to

**William T. Brooks**, individually, of 78 East Broadway St., Gardner, Worcester County, Massachusetts

with **quitclaim** covenants

A certain parcel of land, with the buildings and other improvements thereon, situated on the northeasterly side of East Broadway, Rte 2A, in the Village of South Gardner, Gardner, Worcester County, Massachusetts, bounded and described as follows:

Beginning at the most westerly corner thereof, at a bolt in the northeasterly line of East Broadway, Rte 2A, at a corner of land now or formerly of Josph G. Daigle;

Thence Northeasterly at an included angle of 90° 21' 00" with the last course to be herein described, by said Daigle land, 77.66 feet to an iron pin at a corner of other land of Modern Contract Furniture, Inc. and being shown as Lot "2" on a plan hereinafter referred to;

Thence Southeasterly at an included angle of 89° 41' 23" by said Modern Contract Furniture, Inc. land and lot "2" 87.27 feet to an iron pin in line of land now or formerly of Erwin E. and Norman Gates;

Thence Southwesterly at an included angle of 92° 54' 37" by said Gates land, 77.82 feet to a point in the northeasterly line of East Broadway , Rte 2A;

Thence Northwesterly at an included angle of 87° 03' 00" by the northeasterly line of East Broadway, 90.80 feet to a bolt at a corner of the aforementioned Daigle land and the point of beginning.

Containing 6,917 square feet.

The above described premises are shown as lot 1 on a plan entitled, "Plan of lots prepared for Modern Contract Furniture, Inc., Gardner, Ma, Scale: 1 inch = 20 ft., Jan. 21, 1986, Brian M. Szoc, P.L. Surveyor, 32 Pleasant Street, Gardner, Mass. 01440, " recorded with Worcester District Registry of Deeds in Plan Book 552, Plan 77 and as lot 1 on plan entitled, "Plan of Land Showing Activity & Use Limitation on Land of William T. Brooks & Son Motors, Inc.

PROPERTY ADDRESS: 78 East Broadway St., Gardner, MA 01440

Bk: 41187 Pg: 211

(Owners), Gardner, MA, August 23, 2006, Szoc Surveyors, 32 Pleasant St., Gardner, MA" recorded with the Worcester District Registry of Deeds in Plan Book 852, Plan 17.

Being the same premises conveyed to the grantor by Deed of Philip Nason a/k/a Philip F. Nason dated April 25, 1986 and recorded with said Deeds in Book 9394, Page 43.

This conveyance does not constitute all or substantially all of the assets of the corporation.

No Title Search was preformed by the preparer of this Deed.

Executed as a sealed instrument this 4th day of April, 2007.

Nason Motors, Inc. n/k/a
W.T. Brooks & Son Motors, Inc.
by:

_____          _____
Witness                                         William T. Brooks, President and Treasurer

**Commonwealth of Massachusetts**

Worcester, ss.                                                    21 May, 2007

On this 21 day of May 2007, before me, the undersigned notary public, personally appeared William T. Brooks proved *to me through satisfactory evidence of identification, which was Massachusetts Driver's License* to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose, and executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

11/1/13

ATTEST: WORC. Anthony J. Vigliotti, Register

# EXHIBIT

# D





REAR
78 EAST BROADWAY
GARDNER, MA  01440

# EXHIBIT

# E

MPASS.
RANCE
184, Quincy MA 02269-9184

**Customer Statement**

Encompass Insurance Company of Massachusetts

## THE COMMONWEALTH OF MASSACHUSETTS
### REGISTRY OF MOTOR VEHICLES
#### P.O. BOX 55889 BOSTON, MA 02205-5889
www.mass.gov/rmv

TION FEE INCLUDES $ 5.00
PROCESSING FEE

TRATION NUMBER

| EXPIRES LAST DAY OF ➤ | MONTH | YEAR |
|---|---|---|
| | 12 | 08 |

580

**CERTIFICATE OF REGISTRATION**
MOTORCYCLE

NAME(S) OF OWNER(S) AND MAILING ADDRESS

25.00
0.00
0.00
0.00

BROOKS, WILLIAM T
REAR
78 EAST BROADWAY
GARDNER, MA 01440-3340

EFFECTIVE DATE 05/16/08

25.00

S (IF DIFFERENT)

TRANSACTION NUMBER

02813766030215

*Anne L. Collins*

| ND | ST1100 | MOTCY | RED | | | REGISTRAR |
| M500138 | MODEL NAME | BODY STYLE/TYPE | | IF VEHICLE CARRYING PASSENGERS FOR HIRE MAXIMUM NUMBER OF PASSENGERS THAT CAN BE SEATED. | IF VEHICLE USED FOR TRANSPORTING GOODS, WARES, OR MERCHANDISE: TOTAL REGISTERED WEIGHT. | |
| NUMBER | ENCOMPASS INSURANC | | COLOR BD643592 | | | |

NOT VALID UNTIL STAMPED WITH OFFICIAL SIGNATURE STAMP OR SIGNATURE OF THE REGISTRAR

INSURANCE COMPANY          TITLE NUMBER

## THE COMMONWEALTH OF MASSACHUSETTS
### REGISTRY OF MOTOR VEHICLES
#### P.O. BOX 55889 BOSTON, MA 02205-5889
www.mass.gov/rmv

DOCUMENT
T ALL TIMES

| EXPIRES ST DAY OF ➤ | MONTH | YEAR |
|---|---|---|
| | 09 | 08 |

**CERTIFICATE OF REGISTRATION**
PASSENGER

NAME(S) OF OWNER(S) AND MAILING ADDRESS

OOKS

REAR
78 EAST BROADWAY
GARDNER, MA 01440

EFFECTIVE DATE 12/04/06

06/27/10

TRANSACTION NUMBER

01633866140103

*Anne L. Collins*

| UNNER | UTIL | RED | | | REGISTRAR |
| NAME | BODY STYLE/TYPE | | IF VEHICLE CARRYING PASSENGERS FOR HIRE MAXIMUM NUMBER OF PASSENGERS THAT CAN BE SEATED. | IF VEHICLE USED FOR TRANSPORTING GOODS, WARES, OR MERCHANDISE: TOTAL REGISTERED WEIGHT. | |
| | ENCOMPASS INSURANC | COLOR | | | Auto |

INSURANCE COMPANY
TIL STAMPED WITH OFFICIAL SIGNATURE STAMP OR SIGNATURE OF THE REGISTRAR          TITLE NUMBER

000000000015978066000175390003202l2